**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**
No. 94-10576

BERNARD EUGENE AMOS,

                                        Petitioner-Appellant,


versus


WAYNE SCOTT, Director,
Texas Department of Criminal Justice,
Institutional Division,

                                        Respondent-Appellee.


Appeal from the United States District Court
for the Northern District of Texas

(August 7, 1995)


Before KING, DAVIS, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

    Petitioner-Appellant Bernard Eugene Amos, a Texas death row inmate, appeals the district court's grant of summary judgment in favor of Respondent-Appellant Wayne Scott, Director of the Texas Department of Criminal Justice (the State), denying and dismissing with prejudice Amos' petition for a writ of habeas corpus. For the reasons set forth below, we affirm the judgment of the district

court.

I

FACTUAL HISTORY

The full factual history for this appeal is detailed in the opinion of the Texas Court of Criminal Appeals (TCCA) affirming Amos' conviction and sentence.[1]  Summarized briefly, that history is as follows.  On January 14, 1988, Amos and his cousin, Gary Von Bennett, drove to a Dallas apartment complex looking for something to steal or an apartment to burglarize.  After the two men burglarized one apartment and returned to their car to cache the stolen goods, they were approached by James Joe, an off-duty Dallas police officer and part-time apartment complex security guard. Joe, who was wearing a Dallas Police Department sweatshirt and police badge, identified himself and proceeded to question Amos and Bennett.  Amos became upset during the exchange with Joe, and at some point "flinched," turned, drew a pistol, and shot Joe in the chest at point blank range.  Bennett eventually testified that he immediately ran toward one of the apartment buildings, ducked down, heard three or four more shots, and then nothing.  When Bennett returned to the car, he saw both Amos and Joe lying on the ground.

Bennett was told by Amos that he had been shot and needed help.  Bennett helped Amos into the car and drove to a neighboring apartment complex.  When the police arrived at that apartment complex, Bennett ran and hid.  Amos, who was unable to run, got out

_____

[1]Amos v. States, 819 S.W.2d 156 (Tex. Crim. App. 1991) (*en banc*), cert. denied, 504 U.S. 917 (1992).

2

of the car and tried to hide under a parked truck.  The police found Amos, arrested him, and transported him to a hospital for treatment.

## II

## PROCEDURAL HISTORY

Amos was indicted for the capital murder of James Joe in the course of committing and attempting to commit burglary.  Amos entered a plea of "not guilty" to the offense and a trial followed. Bennett, as the State's key witness, testified to the foregoing facts at the guilt-innocence phase of Amos' trial.  Amos also testified in his own defense, admitting in the course thereof to seven prior felony convictions, one misdemeanor conviction, and four incarcerations in the Texas Department of Corrections.  The jury returned a verdict of guilty as charged in the indictment. After a separate hearing on punishment, the jury, in response to the Texas special issues submitted to it, sentenced Amos to death by lethal injection.  Amos' motion for a new trial was denied following a hearing on that motion.

Amos' conviction and sentence were automatically appealed to the TCCA, the state's highest appellate court for criminal appeals. In an *en banc* decision, that court affirmed Amos' conviction and sentence.[2]  The United States Supreme Court denied Amos' petition for writ of certiorari.[3]

Amos filed his first petition for writs of habeas corpus

---

[2]Id.

[3]Amos v. Texas, 504 U.S. 917 (1992).

3

simultaneously in the TCCA and the Criminal District Court of Dallas County (state habeas court or trial court, depending on context). The state habeas court denied Amos' petition in an order adopting the State's proposed findings of fact and conclusions of law and adding the court's own supplemental findings of fact and conclusions of law. The TCCA also denied Amos' petition, holding that the findings entered by the trial court were supported by the record.

Amos filed a petition for federal writ of habeas corpus and stay of execution in the district court, which granted the stay pending its examination of Amos' habeas petition. In response to Amos' petition, the State filed an answer and a motion for summary judgment. Following oral argument, the district court granted summary judgment in favor of the State, dismissing Amos' petition and vacating the stay of execution. In rejecting Amos' petition, the district court held that (1) six of Amos' eleven grounds for relief were procedurally barred under state law;[4] (2) Amos' claim that the State failed to disclose material impeachment evidence and to correct perjured testimony was meritless; (3) Amos did not satisfy the standard necessary to establish his claim of

_____

[4]Amos sought habeas relief on eleven grounds. The State contended that six of the eleven grounds were procedurally barred (arguing also that two of those six were precluded from review because they required the application of a new federal constitutional rule). In his habeas petition, Amos addressed specifically only four of the procedurally defaulted claims. The district court first concluded that the two unaddressed claims were barred, then, after considering whether Amos had shown cause and prejudice for his procedural default, a fundamental miscarriage of justice, or some other right to an evidentiary hearing, held that the remaining four claims were procedurally barred.

4

ineffective assistance of counsel on the grounds that counsel failed to a) conduct a reasonable punishment phase investigation, b) adequately voir dire the jury panel, and c) present evidence that Amos did not knowingly waive his Fifth Amendment rights; and (4) Amos showed no basis for relief on his claim challenging the Texas special issues, as interpreted and applied in his case. Amos' motion to alter or amend the district court's judgment was denied.

Amos timely filed notice of appeal to this court but the district court denied a certificate of probable cause (CPC) to appeal. Amos filed a second notice of appeal as well as another motion for CPC. Again, the district court denied Amos' motion for CPC. Amos then filed a request for CPC with this court, which was carried with this appeal. We grant Amos' request for a CPC, and proceed to the merits of his appeal.

III

ANALYSIS

Amos asserts on appeal that the district court erred in (1) relying on the Texas contemporaneous objection rule as an "independent and adequate state-law ground" barring federal court review of his claim that the totality of circumstances surrounding his trial violated his Sixth Amendment right to a fair trial;[5] (2) denying him an evidentiary hearing on his claim that the State

_____

[5]Amos' claim stems from what he characterizes as the conspicuous presence of numerous uniformed police officers in the courtroom during the closing arguments of the punishment phase of his trial and the prosecutor's remarks directing the jury's attention to those officers.

5

failed to disclose material impeachment evidence and knowingly presented false testimony; and (3) denying him an evidentiary hearing on his claim that his counsels' failure to investigate and present mitigating evidence during the punishment phase of his trial constitutes ineffective assistance of counsel. Amos did not re-urge on appeal his challenge to the Texas special issues.

A. STANDARD OF REVIEW

In reviewing the habeas proceedings of petitioners in state custody, we must accord a presumption of correctness to state court findings of facts.[6] We review the district court's findings of fact for clear error and decide any issues of law *de novo*.[7] A district court's denial of federal habeas review based on a state procedural ground presents a legal question that we review *de novo*.[8]

B. TEXAS' CONTEMPORANEOUS OBJECTION RULE - INDEPENDENT AND ADEQUATE?

Amos contends that the district court erroneously relied on the Texas contemporaneous objection rule as an independent and adequate state-law ground on which to deny review of many of his

---

[6]28 U.S.C. § 2254(d) (1992); <u>Sumner v. Mata</u>, 455 U.S. 591, 591-92 (1982).

[7]<u>Boyd v. Scott</u>, 45 F.3d 876, 879 (5th Cir. 1994), <u>cert. denied</u>, 115 S.Ct. 1964 (1995); <u>Williams v. Collins</u>, 16 F.3d 626, 630 (5th Cir.), <u>cert. denied</u>, 115 S.Ct. 42 (1994); <u>Baty v. Balkcom</u>, 661 F.2d 391, 394 n.7 (5th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1011 (1982).

[8]<u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988) ("'[W]e have consistently held the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question.'") (quoting <u>Henry v. Mississippi</u>, 379 U.S. 443, 447 (1965)).

6

federal habeas claims.[9]  Amos insists vigorously that the state procedural rule is not an <u>adequate</u> state-law ground, advancing two fundamental reasons: (1) the rule and its exceptions are not strictly or regularly followed by the TCCA, and (2) the rule is an inherently discretionary rule of procedure and therefore is *per se* inadequate.

1.  <u>Strictly or Regularly Followed?</u>

A federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both <u>independent</u> of the merits of the federal claim and <u>adequate</u> to support that judgment.[10]  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.[11]

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court rendering a judgment in the case has "clearly and expressly" indicated that its judgment is independent of federal law, e.g., rests on a state procedural bar.[12]  Relevant to this appeal in this

_____

[9]<u>See</u> TEX. R. APP. PRO. 52(a) (1994) (to preserve complaint for appellate review, party must have presented to trial court timely request, objection, or motion, stating specific grounds for ruling desired if specific grounds were not apparent from context).

[10]<u>Harris v. Reed</u>, 489 U.S. 255, 260, 262 (1989).

[11]<u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991); <u>Harris</u>, 489 U.S. at 261.

[12]<u>Id.</u> 263 (quoting <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327 (1985); <u>Coleman</u>, 501 U.S. at 735; <u>Young v. Herring</u>, 938 F.2d 543, 553-54 (5th Cir. 1991) (key to determining whether state court

regard is a recent Supreme Court case, <u>Sochor v. Florida</u>,[13] in which the Court held that a state court opinion expressing that "none of the complained-of jury instructions were objected to at trial, and thus, . . . are not preserved for appeal," indicates with "requisite clarity" the rejection of a federal claim based on an alternative state-law ground.[14] We note in particular that the Court reached this conclusion even though the state court opinion also expressed that, "[i]n any event, [the] claims . . . have no merit."[15]

In addition to being independent of federal law, a state procedural rule barring federal habeas review of a federal claim must be <u>adequate</u>. In general, the test for the adequacy of such a rule is that it is strictly or regularly followed by the cognizant state court.[16] The Supreme Court has further defined this concept

opinion rests on independent and adequate state ground "is not the clarity of the state court's language, or even whether the state court addressed the merits of the federal claim, but whether the state court may have based its decision on its understanding of federal law."), <u>cert. denied</u>, 503 U.S. 940 (1992).

[13]504 U.S. 527 (1992).

[14]<u>Id.</u> at 534.

[15]<u>Id.</u> at 534 n. *. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10 (1989) (noting that state court need not fear reaching merits of federal claim in <u>alternative</u> holding as long as state court explicitly invokes state procedural bar as a separate basis for decision).

[16]<u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988); <u>Barr v. City of Columbia</u>, 378 U.S. 146, 149 (1964); <u>Wilcher v. Hargett</u>, 978 F.2d 872, 879 (5th Cir. 1992), <u>cert. denied</u>, 114 S.Ct. 96 (1993). Although the test for determining the adequacy of a state-law ground is disjunctive (strictly <u>or</u> regularly), we have not discovered any cases in which the Supreme Court has divided the test into a separate standard for each term. The Court appears to

of adequacy, however, to include a state procedural ground that is strictly or regularly applied <u>evenhandedly to the vast majority of similar claims</u>.[17]

Federal courts will presume that there is no independent and adequate state ground for a state court decision when that decision "'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'"[18] Nevertheless, a judgment resting on an independent and adequate state rule of procedural default will bar federal habeas review of a federal claim if the habeas petitioner cannot show "cause" for the default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of

---

treat synonymously the terms of the standard, and on at least one occasion has interchanged the word "regularly" with the word "consistent." For the purposes of this opinion, therefore, we discern no significant distinction between the words "strictly" and "regularly" as those terms are used in determining whether a state procedural rule is adequate, and we use the terms according to their common meaning. <u>See</u> BLACK'S LAW DICTIONARY 1286, 1422 (6th ed. 1990) (defining "strictly" as "a strict manner; closely, precisely, rigorously; stringently; positively;" and "regularly" as "at fixed and certain intervals, regular in point of time. In accordance with some consistent or periodical rule or practice.").

[17]<u>See</u> <u>Dugger v. Adams</u>, 489 U.S. 401, 410 n.6 (1989) (concluding that state court "faithfully applied" its procedural rule to vast majority of cases raising <u>same type of constitutional claim</u> (<u>Caldwell</u> claim)); <u>Hathorn v. Lovorn</u>, 457 U.S. 255, 263 (1982) ("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims.").

[18]<u>Coleman v. Thompson</u>, 501 U.S. 722, 735 (1991) (quoting <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983)).

justice."[19]

     *a. The Texas Rule*

Amos contends that the Texas contemporaneous objection rule is not an adequate state procedural ground on which to base a denial of federal habeas review of his claims because the rule is neither strictly nor regularly followed.  To support his contention, Amos lists a number of cases in which, he asserts, the TCCA has expressly--and inconsistently--excused a criminal defendant's non-compliance with the procedural rule and proceeded to reach the merits of the otherwise defaulted claim[20]  Amos essentially argues

---

[19]Harris v. Reed, 489 U.S. 255, 262 (1989); Engle v. Issac, 456 U.S. 107, 129 (1982).

[20]See, e.g., Duran v. State, 844 S.W.2d 745, 746 n.1 (Tex. Crim. App. 1992, no writ) (noting that "Although appellant failed to preserve error by not objecting, the Court of Appeals addressed the merits of appellant's claim in the interest of justice."); Green v. State, 840 S.W.2d 394, 403, 403 n.6 (Tex. Crim. App. 1992) (finding procedural default ("appellant has waived error"); noting in footnote that "in the interest of justice" court reviewed merits of the defaulted claim), cert. denied, 113 S.Ct. 1819 (1993); Ransom v. State, 789 S.W.2d 572, 585 (Tex. Crim. App. 1989) (concluding that, as no objection was raised at trial, nothing was before court on review; followed by discussion on merits), cert. denied, 497 U.S. 1010 (1990); Stoker v. State, 788 S.W.2d 1, 16 n.19 (Tex. Crim. App. 1989) ("Appellants complaint is not properly preserved for review.  However, in the interest of justice and due to severity of the attending punishment we addressed appellant's claim."), cert. denied, 498 U.S. 951 (1990); Huffman v. State, 746 S.W.2d 212, 222-23 (Tex. Crim. App. 1988, no writ) ("nothing is presented for review;"  "Nevertheless, we find . . ."); May v. State, 738 S.W.2d 261, 269 (Tex. Crim. App.) ("failure to object waives any alleged error," "However, we have examined the record . . ."), cert. denied, 484 U.S. 872 (1987); Wilkerson v. State, 736 S.W.2d 656, 663-64 (Tex. Crim. App. 1987, no writ) (no objection to testimony was made at trial, thus nothing preserved for review; "even if it could be said . . ."); Barnard v. State, 730 S.W.2d 703, 716 (Tex. Crim. App. 1987) (noting that defendant's general objection presented no error for review; "Nevertheless, we will examine the merits . . ."), cert. denied, 485 U.S. 929 (1988); Hogue v. State, 711 S.W.2d 9, 28 (Tex. Crim. App.) (concluding

10

that the TCCA fails to follow strictly or regularly the contemporaneous objection rule whenever it first notes a defendant's failure to comply with the rule, then "nevertheless" or "in the interest of justice" goes on to excuse the procedural default and consider the substantive merits of the claim. Amos insists that the fact that the state court prefaces its discussion of the merits with such transitional terms as "nevertheless" or "however" demonstrates the court's clear intent to excuse the procedural error and deny relief solely on the merits.[21] Amos deduces, therefore, that the state court's "unambiguous intent to excuse" the defendant's failure to observe the contemporaneous objection rule constitutes that court's failure to follow strictly or regularly the rule.

At the outset we note that, in challenging the adequacy of the Texas contemporaneous objection rule, Amos attacks the rule in its

---

that, as appellant's objection at trial did not comport with argument raised on appeal, court not mandated to consider argument; "Nevertheless, we will address the merits . . ."), cert. denied, 479 U.S. 922 (1986); Phillips v. State, 701 S.W.2d 875, 881-82 (Tex. Crim. App. 1985) (no error preserved; "even if . . .advanced . . . no merit."), cert. denied, 477 U.S. 909 (1986); Barney v. State, 698 S.W.2d 114, 123 (Tex. Crim. App. 1985, no writ) ("nothing is preserved for review. . .;" "We nevertheless proceed to its review in the interest of justice."); Guzmon v. State, 697 S.W.2d 404, 409-10 (Tex. Crim. App. 1985) (holding that "nothing is presented for review;" followed with discussion on merits), cert. denied, 475 U.S. 1090 (1986); Green v. State, 682 S.W.2d 271, 275 (Tex. Crim. App. 1984) (no objection, failure to object waives error; followed by comment on the merits of the claim), cert. denied, 470 U.S. 1034 (1985).

[21]See, e.g., Heath v. Jones, 941 F.2d 1126, 1137 (11th Cir. 1991) (holding that state court's use of term "nevertheless" in addressing the merits of claim waived previously mentioned procedural default), cert. denied, 502 U.S. 1077 (1992).

11

entirety, as it has been applied to myriad claims in capital and non-capital cases from 1972 to the present. What Amos fails to do in his zealous attempt to discredit the rule, however, is to direct us to cases in which the rule has been applied--either evenhandedly or unevenhandedly--to claims <u>identical or similar</u> to his own Sixth Amendment claim of an unfair trial.[22] Unfortunately for Amos, our research on this precise Sixth Amendment claim--and presumably his as well--reveals that, on the limited occasions in which a Texas appellate court has applied Texas Rule 52(a) to a similar claim, the court has applied the rule evenhandedly.[23] Because Amos has not

_____

[22]Amos' reliance on <u>Powell v. State</u>, 897 S.W.2d 307 (Tex. Crim. App., 1994), <u>cert. filed</u>, (May 1995), is misplaced. Amos asserts that the TCCA in <u>Powell</u> excused the defendant's failure to comply with the contemporaneous rule and discussed the merits of an identical and unobjected-to Sixth Amendment claim alleging a "lynch-mob atmosphere." We disagree.
    First, we do not consider as dispositive of our review of the application of the contemporaneous objection rule in 1992, a case that applied (or allegedly excused) the rule in 1994. Second, even if <u>Powell</u> were "timely," we would disagree with Amos' characterization of the court's treatment of the claim. In <u>Powell</u>, the TCCA first sustained one of the defendant's points of error stemming from his sentencing trial, holding that the verdict sentencing the defendant was incomplete and the sentence of death was tainted. The court next dismissed as moot the defendant's remaining claims, including his claims alleging a "lynch-mob atmosphere" at his sentencing trial. Although the court expressed in a footnote its concern that some of the unaddressed points of error were troubling, (e.g., the "lynch-mob atmosphere"), noting specifically "the pattern of escalating disregard for constitutional order on the part of the trial court and the State," the court did not rule on the merits of the claim. As the TCCA had already ruled that the claim was moot, its dicta commenting on what it perceived to be the practice of the trial court and State cannot be viewed as an occasion in which the court excused the procedural default to rule on the merits of the claim.

[23]Other than <u>Powell</u>, Amos has not directed us specifically to any TCCA cases raising identical or similar claims. And our research reveals only those instances in which similar claims were addressed by the intermediate appellate courts of Texas. As Amos

12

demonstrated that the TCCA does not strictly or regularly apply the contemporaneous objection rule to claims <u>identical or similar</u> to his Sixth Amendment claim, we are convinced that the rule is an adequate state-law ground, regardless of whether that court may be less than strict or regular in applying the rule to dissimilar claims.

Even if we were to look outside Amos' particular context, we would find that Texas courts apply the contemporaneous objection rule strictly and regularly. The vast majority of cases on which Amos relies do not reflect instances in which the TCCA has failed to follow strictly or regularly the contemporaneous objection rule; quite the opposite, the substantial majority reflect instances in which the state court first held that a defendant's claims were procedurally barred and then addressed the merits of the defaulted claim in an alternative holding.[24] Given the Supreme Court's

raises his "hostile trial environment" Sixth Amendment claim as a distinct claim (raising a separate Sixth Amendment claim alleging ineffective assistance of counsel), we note only those cases reviewing claims of an unfair trial due to circumstances other than ineffective assistance of counsel. <u>See</u>, <u>e.g.</u>, <u>Mayfield v. State</u>, 803 S.W.2d 859, 862-65 (Tex. Ct. App. - Corpus Christi 1991, no writ) (reviewing defendant's sixteen points of error alleging denial of due process and unfair trial, rejecting as barred those errors to which defendant failed to object pursuant to Rule 52(a)). <u>Cf.</u> <u>O'Rarden v. State</u>, 777 S.W.2d 455, 460 (Tex. Ct. App – Dallas 1989, writ ref'd) (holding that defendant's <u>oral motion</u> requesting continuance was sufficient to preserve error for review pursuant to Rule 52(a) when it was clear that both trial judge and prosecutor were aware of substance of complaint).

[24]If we were to follow Amos' contention to its (il)logical conclusion, we would be telling the states within this circuit that, unless you use the magic word "alternative" when following a procedural default holding with a merits holding, we will deem your application of your rule not to be strict or regular, and thus not independent and adequate. We are unwilling to set such an

13

conclusion in <u>Sochor</u> that the state court opinion in that case indicated with requisite clarity that the defendant's federal claim was rejected on alternative grounds--state procedural default and federal merits--it follows that here, when the TCCA uses similar language for the same purpose, such language must be viewed as signaling an alternative holding independent of federal law, not as an indication that the state court is excusing the procedural default.

The fact that from time to time the state court uses any one of an infinite variety of particularized transitional phrases to signal alternative holdings--language that Amos' characterizes as demonstrating the court's unambiguous intent to excuse the procedural default--is irrelevant in this instance. Harking to the Supreme Court's dicta in <u>Coleman v. Thompson</u>,[25] we remind ourselves--and Amos--that "we have no power to tell state courts how they must write their opinions. We encourage state courts to express plainly . . . the grounds upon which their judgments rests, but <u>we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim</u>. . . ."[26]

---

arbitrarily Draconian trap for the unwary.

[25]501 U.S. 722 (1991).

[26]<u>Id.</u> at 739 (emphasis added) (declining to expand the <u>Harris</u> presumption to apply in all habeas cases presented to a state court in which the state court did not "clearly and expressly" state that its judgment rests on state law; reiterating that presumption applies only when it fairly appears that state court rested decision primarily on federal law).

14

We decline today to impose on the TCCA the need to pronounce some shibboleth or incant some magic words guaranteeing safe passage from a holding based on a state procedural bar to an alternative holding on the merits without infecting the opinion with "excuse" and thus dooming it to inadequacy. We likewise decline Amos' invitation to hold that a court's particular choice of words or phrases to reflect the shifting of its focus from a holding grounded on independent state law to an alternative holding based on federal law is dispositive when determining whether that state-law ground is adequate. We remain satisfied instead that when the TCCA holds that a criminal defendant's federal claim is procedurally barred, then proceeds to address the merits of the defaulted claim and voice a second holding, the opinion is properly viewed as stating alternative holdings. Only if the TCCA should clearly and unequivocally excuse the procedural default will we view the opinion as one decided on the merits only.

As we discern that all but a de minimis few of the cases cited by Amos reflect occasions in which the Texas state court has rendered alternative holdings rather than excused the procedural default, it follows that the TCCA strictly or regularly enforces the contemporaneous objection rule. The handful of cases upon which Amos relies as typifying the TCCA's disregard of the contemporaneous objection rule are either insufficient to undercut the adequacy of the Texas rule or inapplicable.[27] We acknowledge

---

[27]See, e.g., Young v. State, 826 S.W.2d 141 (Tex. Crim. App. 1991) (holding that defendant not required to request trial judge to make finding on **Batson** motion in order to have same evidence

15

with approval the principle that an occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate;[28] after all, "regularly" is not synonymous with "always" and "strictly" is not synonymous with "unanimously."  In <u>Bass v. Estelle</u>,[29] we determined that

> . . . we do not regard an occasional act of grace by the Texas court in entertaining the merits of a claim that might have been viewed as waived by procedural default to

---

considered on direct appeal), <u>ref'd on remand petition for discretionary review</u>, 856 S.W.2d 175 (Tex. Crim. App. 1993); <u>Yee v. State</u>, 815 S.W.2d 691, 692 (Tex. Crim. App. 1991, no writ (reh. on petition for discretionary review denied)) (White, J. dissenting) (complaining that majority excuses defendant's failure to perfect bill of exception under **Rule 52(b)**); <u>Harris v. State</u>, 790 S.W.2d 568, 582-83 (Tex. Crim. App. 1989, no writ) (reviewing under harmless error rule, merits of defendant's unobjected-to claim that the state trial court failed to comply with the mandates of the Code of Criminal Procedure); <u>Valcarcel v. State</u>, 765 S.W.2d 412 (Tex. Crim. App. 1989, no writ) (McCormick, J. dissenting) (criticizing majority for not discussing whether defendant's failure to object to "bolstering" testimony at trial failed to preserve error); <u>East v. State</u>, 702 S.W.2d 606, 615 (Tex. Crim. App.) (observing that defendant raised his claim of an indictment error for first time on appeal; NOTE: in 1985 a claim based on indictment error fell within the exceptions to the contemporaneous objection rule; since 1985, changes to the Texas constitution and Code of Criminal Procedure require that such error be preserved, <u>see</u> <u>Studer v. State</u>, 799 S.W.2d 263, 271-73 (Tex. Crim. App. 1990, no writ)), <u>cert. denied</u>, 474 U.S. 1000 (1985).

[28]<u>See</u>, <u>e.g.</u>, <u>Dugger v. Adams</u>, 489 U.S. 401, 410 n.6 (1989) (concluding that "the few cases that respondent and the dissent cite as ignoring procedural defaults do not convince us that the [state supreme court] fails to apply its procedural rule regularly and consistently"); <u>Andrews v. Deland</u>, 943 F.2d 1162, 1190 (10th Cir. 1991) ("[a]n allegedly uneven application of a state procedural default rule *in general* does not necessarily establish that the application of a procedural default rule in a particular case is not adequate.") (citing <u>Dugger</u>, 489 U.S. at 410)), <u>cert. denied</u>, 502 U.S. 1110 (1992). <u>See</u> <u>also</u> <u>Klein v. Neal</u>, 45 F.3d 1395, 1398 (10th Cir. 1995) (interpreting <u>Andrews</u> for premise that state procedural rule is adequate as long as applied regularly and evenhandedly in vast majority of cases).

[29]705 F.2d 121 (5th Cir.), <u>cert. denied</u>, 464 U.S. 865 (1983).

16

constitute such a failure to strictly or regularly follow the state's contemporaneous objection rule as permits us to disregard that rule generally or where the state court has not done so.[30]

In Bass, we distinguished the appellant's contention that the contemporaneous objection rule was not strictly or regularly followed from a challenge of the same ilk that had proved successful in Barr v. Columbia.[31] The Supreme Court in Barr refused to accept the state "generality of exceptions" rule as an independent and adequate state law barring federal habeas review after the Court's review of the state jurisprudence identified four separate decisions rendered by the same state court--just weeks before the petitioner's appeal--in which the state court had held that identical "general" exceptions were sufficient. In distinguishing --and rejecting--the issue raised in Barr from the "adequacy issue" posed in Bass, we essentially determined that the petitioner in Bass had not presented the same type of clearly identifiable disregard of the state rule as had the petitioner in Barr. We noted that "[u]ntil such constructional legerdemain as occurred in Barr is drawn before us," we would have no occasion to re-examine our prior holding that "we will not excuse a procedural default in a case where state courts have not done so."[32]

---

[30]Id. at 122-23.

[31]378 U.S. 146 (1964).

[32]Bass, 705 F.2d at 123. See Henry v. Wainwright, 686 F.2d 311, 314 n.4 (5th Cir. 1982) (addressing appellant's contention that court circumvented precedent in finding that claim was not barred from federal review because state court excused procedural bar in unrelated case; expressing that we did not intend to suggest that the past excuse of a default in another case allows a federal

17

We are satisfied that, despite his strenuous efforts to marshall cases in which the TCCA has failed to apply the contemporaneous objection rule, Amos has not presented to us a situation in which we should conclude that the contemporaneous objection rule--as applied by the TCCA to Amos' specific claims as well as to essentially identical claims in other cases--is not strictly or regularly followed. We find to the contrary, then, that it is thus followed.

*b. The Exceptions*

In a variation of his theme composed to "undercut the adequacy"[33] of the contemporaneous objection rule, Amos argues that a state court's failure to apply, consistently and rationally, recognized exceptions to a procedural default rule will render the larger procedural rule an inadequate state law ground in all cases.[34] Specifically, Amos contends that the TCCA does not strictly or regularly apply its two recognized exceptions--the "right not recognized" exception and the "fundamental error" exception--to the contemporaneous objection rule, as a result of which the rule as a whole is not an adequate state-law ground.

i. Right Not Recognized Exception

---

court to excuse a default in a case where the state courts have not), vacated on other grounds, 463 U.S. 1223 (1983).

[33]See Dugger, supra n. 17, 28.

[34]See, e.g., Hill v. Black, 887 F.2d 513, 516 (5th Cir. 1989) (noting that Mississippi court's regular and consistent application of plain error exception to state contemporaneous objection rule prevents application of rule being deemed haphazard or arbitrary), cert. granted and judgment vacated, 498 U.S. 801 (1990), opinion reinstated, 920 F.2d 251 (5th Cir. 1990).

Amos cites several cases in which he asserts the TCCA has not consistently applied the "right not recognized" exception to the contemporaneous objection rule to claims based on <u>Penry v. Lynaugh</u>,[35] and <u>Estelle v. Smith</u>.[36]  As we cannot read the cases on which Amos relies to support this contention, however, we remain convinced that, in the vast majority of cases, the TCCA strictly and regularly applies both the contemporaneous objection rule and its "right-not-recognized" exception.  First, we reject out of hand as wholly inapposite those cases in which the TCCA barred <u>Penry</u> claims <u>before</u> that court even recognized that such claims could be raised as a right not recognized.[37]  Amos asserts nevertheless that

_____

[35]492 U.S. 302 (1989).

[36]451 U.S. 454 (1981) (holding that psychiatrist's testimony at penalty stage of trial regarding court-ordered pretrial competency examination of accused, who was in custody at the time of examination and had neither been informed of his rights nor had waived such rights, violates Fifth Amendment privilege against self-incrimination and Sixth Amendment right to counsel).

[37]One of these cases, <u>Selvage v. Lynaugh</u>, 842 F.2d 89, 93 (1988), was reconsidered after the Supreme Court issued its opinion in <u>Penry</u>.  The subsequent opinion is considered the landmark case in which the TCCA recognized that <u>Penry</u> claims could be raised retroactively on appeal despite a procedural bar.  <u>See</u> <u>Selvage v. Collins</u>, 816 S.W.2d 390 (Tex. Crim. App. 1991).
In <u>Fierro v. Lynaugh</u>, 879 F.2d 1276, 1281 (5th Cir. 1989), <u>cert. denied</u>, 494 U.S. 1060 (1990) we determined that the defendant's failure to object to or request jury instructions on mitigating evidence was barred from review under the Texas contemporaneous objection rule.  Even though this may have been error on our part in light of the fact that we reviewed the claim after <u>Penry</u> had been decided, the TCCA applied the contemporaneous objection rule to the claim in 1986 (antedating <u>Penry</u>).  Similarly, although in <u>Mayo v. Lynaugh</u>, 893 F.2d 683 (5th Cir. 1990) (petition for rehearing) we reversed and remanded our previous decision holding that the defendant's <u>Penry</u> claim had been procedurally defaulted, there is nothing in the state court opinion that suggests that the state court even addressed the issue, again, because the right on which the subsequent claim to this court was

19

even after the TCCA recognized <u>Penry</u> claims as a right not recognized, that court disregarded the exception and held that such claims <u>were</u> procedurally barred.

Amos relies on <u>Sawyers v. Collins</u>,[38] yet that case offers no support to his argument.[39]  As we determined in <u>Sawyers</u> that the TCCA did not deny Sawyers' <u>Penry</u> claim on the basis of procedural default, but rather on the merits, it does not follow--as Amos urges--that <u>Sawyers</u> presents an occasion in which the state court failed to apply strictly the right not recognized exception to a <u>Penry</u> claim.

---

based was not yet recognized. <u>See</u> <u>Mayo v. State</u>, 708 S.W.2d 854 (Tex. Crim. App. 1986, no writ). Moreover, as the State in <u>Mayo</u> had waived its right to seek exhaustion in state court, it was the district court that initially held that the defendant's <u>Penry</u> claim was procedurally defaulted. <u>See</u>, <u>e.g.</u>, <u>Mayo v. Lynaugh</u>, 883 F.2d 358, 359 (5th Cir. 1989).

[38]986 F.2d 1493 (5th Cir.), <u>cert. denied</u>, 113 S.Ct. 2405 (1993).

[39]In <u>Sawyers</u> we reviewed for error the district court's holding that Sawyers' <u>Penry</u> claim was procedurally barred from federal review.  We observed that the state trial court had denied Sawyers' <u>Penry</u> claim, alternatively, on state procedural grounds and on the merits.  The TCCA too had denied Sawyers' claim, stating only that the trial court's findings and conclusions were supported by the record.  We noted that the TCCA had decided <u>Selvage v. Collins</u>, 816 S.W.2d 390 (Tex. Crim. App. 1991), one week before denying Sawyers' petition, and [we] determined that, if the TCCA had denied Sawyers' petition on the basis of procedural default, that decision would have been in direct conflict with <u>Selvage</u>.  Relying on the <u>Selvage</u> opinion, we concluded that there was strong evidence that the TCCA had denied Sawyers' <u>Penry</u> claim on the merits rather than on grounds of procedural bar.  Accordingly, we held that the district court had erred in holding that Sawyers' claim was procedurally barred. <u>Sawyers</u> 986 F.2d at 1500.  <u>See</u>, <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 805 (1991) (strong evidence can refute presumption that where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting same claim rest on same grounds articulated in prior opinion).

20

Amos cites but a single case in support of his contention that the TCCA does not consistently and rationally apply the right not recognized exception to <u>Estelle v. Smith</u> claims.[40] Amos' reliance on this one case is misplaced, however, as the relevant opinion was rendered in 1995. We do not consider as dispositive of our review of the application of the contemporaneous objection rule in 1992, a case that applied (or allegedly excused) the rule in 1995.

## ii. Fundamental Error Exception

Amos next contends that, even though the TCCA has not developed a defined, consistently-applied fundamental error exception to the contemporaneous objection rule, that court inconsistently and indiscriminately applies such an exception to various fundamental error claims. Amos rejects the State's response that the fundamental error exception is limited to unobjected-to jury charge error, and notes that the TCCA has held recently in <u>Marin v. State</u>,[41] that <u>numerous</u> types of statutory and constitutional claims are not subject to the contemporaneous objection rule. Further, Amos suggests that in "the rare instances" when a fundamental error exception has been applied to non-jury charge error, the Texas courts have done so inconsistently. Again, we are not persuaded.

Contrary to the argument that Amos tries to make in regard to

---

[40]<u>See</u> <u>Ex Parte Hawkins</u>, Writ. No. 7,369-08 (state court opinion dated February 17, 1995).

[41]<u>See</u> <u>Marin v. State</u>, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), <u>rev'd on other grounds</u>, 891 S.W.2d 267 (Tex. Crim. App. 1994).

<u>Marin</u>, our review of that case convinces us that Texas' adjudicatory system limits the types of rights that fall within the scope of its Rule 52(a), thus, the rule itself cannot be deemed as inadequate merely because particular types of fundamental claims <u>must</u> be treated as exceptions to the rule.[42]  Similarly, we find meritless Amos' contention that the TCCA inconsistently applies the fundamental error exception to errors other than jury-charge error.[43]  In rejecting this argument, we note that Amos compares cases in which the TCCA has acknowledged that a claim of double jeopardy--a fundamental constitutional guarantee--may be raised for the first time on appeal,[44] to one case in which that court denied

---

[42]In <u>Marin</u>, the TCCA divided the rules defining Texas' adjudicatory system into three categories of rights and requirements.  In so doing, the court noted that Texas Rule 52(a) applies only to that category of rights that must be implemented upon request, but not to the other two categories which encompass absolute rights and requirement and rights that must be implemented unless expressly waived.  <u>Id.</u> at 278-79.

[43]Amos contends that even though the Texas state courts have held that double jeopardy and collateral estoppel claims are so fundamental that they may be raised for the first time on appeal, those same courts have on occasion held that such claims are procedurally defaulted unless preserved by objections made at trial.

[44]<u>See</u>, <u>e.g.</u>, <u>Simmons v. State</u>, 745 S.W.2d 348, 351-52 (Tex. Crim. App. 1987, no writ) (observing that double jeopardy claims could be--and were--raised for first time in state appellate court); <u>Ex Parte Myers</u>, 618 S.W.2d 365, 368-69 (Tex. Crim. App.) (holding that Supreme Court decision in which Court held that defendant's right to have trial completed by particular tribunal is within constitutional guarantee against double jeopardy is retroactively applicable to convictions that became final prior to such decision (<u>see</u>, <u>Crist v. Bretz</u>, 437 U.S. 28 (1978)), <u>cert. denied</u>, 454 U.S. 1091 (1981); <u>Jones v. State</u>, 586 S.W.2d 542, 544 (Tex. Crim. App. 1979, no writ) (noting that double jeopardy claim may be raised for first time on appeal; noting also that defendant had filed motion regarding double jeopardy claim in trial court before entering guilty plea).

22

review of a claim grounded in the doctrine of collateral estoppel,[45] and to cases in which a different state appellate court has reviewed or discussed the same.[46]

### 2. *Per Se* Inadequate?

Neither do we find persuasive Amos' assertion that the Texas contemporaneous objection rule is inherently discretionary and is therefore *per se* an inadequate state-law ground.[47] As just discussed, Rule 52(a) is not inherently or universally discretionary: The TCCA limits the application of the rule to a specific category of rights, and that same court defines and limits the occasions in which the rule itself must be excused. We are satisfied that when these standards, which govern the application of the rule, are viewed in conjunction with the state court's practice of regularly and strictly applying the rule and its exceptions, they demonstrate that the Texas contemporaneous

---

[45]See Disheroon v. State, 687 S.W.2d 332, 335 (Tex. Crim. App. 1985, no writ) (procedurally barring from review claim based on doctrine of collateral estoppel).

[46]See, e.g., Elwell v. State, 872 S.W.2d 797, 799 (Tex. Ct. App.-Dallas, 1994) (conviction for driving while intoxicated; noting that defendant waived "collateral estoppel/double jeopardy" claim by failing to object; discussing and rejecting claim on merits), denial of habeas corpus aff'd, 1995 WL 376762 (Tex. App.-Dallas, 1995); Casey v. State, 828 S.W.2d 214, 215-17 & n. 2 (Tex. Ct. App. - Amarillo 1992, no writ) (opining in dicta that statement that double jeopardy claims may be raised for first time in criminal appellate court is inconsistent with large body of caselaw holding that double jeopardy may not be raised on appeal (citing one case to support contention regarding large body of caselaw)).

[47]See Williams v. Georgia, 349 U.S. 375 (1955) (holding that court may not in its discretion allow questions to be raised at late stages of a trial when as a matter of discretion court declines to entertain constitutional claim while passing on kindred issues on other occasions).

objection rule is not an inherently discretionary--and therefore inadequate--state procedural rule.

In sum, we conclude that the TCCA strictly and regularly applies its contemporaneous objection rule and the recognized exceptions thereto in the vast majority of cases (and particularly in cases raising identical or similar Sixth Amendment claims), that come before it. We also conclude that the relatively few occasions cited by Amos in which it might be said that the TCCA has disregarded the rule and its exceptions are not sufficient to undercut the overall regularity and consistency of their application and thus the adequacy of the state procedural bar. We hold, therefore, that the Texas contemporaneous objection rule, as applied by the TCCA to Amos' petition for writ of habeas corpus, is an independent and adequate state-law procedural ground sufficient to bar federal court habeas review of federal claims. Accordingly, we hold that here the district court did not err in categorizing that rule as an independent and adequate state procedural rule and relying on it as grounds for refusing to review Amos' claim that the totality of circumstances surrounding his trial violated his right to a fair trial.[48]

C. EVIDENTIARY HEARING

---

[48]Although Amos does not raise the district court's treatment of his "cause and prejudice" argument on appeal, we affirm the district court's conclusion that Amos failed to establish that he was entitled to relief, notwithstanding the procedural default of his claim, on the ground that there was cause for and actual prejudice stemming from his lawyers' failure to object to the pretrial publicity and hostile atmosphere surrounding his trial.

Amos asserts on appeal that the district court erred in denying him an evidentiary hearing on his claim that the State failed to disclose material impeachment evidence and to correct false testimony (<u>Giglio/Napue</u> claim)[49] and his claim of ineffective assistance of counsel.

1. *Giglio/Napue* Claim

An evidentiary hearing in a federal habeas corpus proceeding is mandatory only when (1) there is a factual dispute which, if resolved in the petitioner's favor, would entitle the petitioner to relief, <u>and</u> (2) the petitioner did not receive a full and fair evidentiary hearing in state court.[50] The burden is on the habeas petitioner to allege facts which, if proved, would entitle him to relief.[51]

Amos requested a federal evidentiary hearing to prove the factual basis of his <u>Giglio/Napue</u> claim, in which he alleged that the State failed to disclose that it had reached an agreement with Bennett in exchange for his testimony and failed to correct false testimony elicited from Bennett. Bennett testified at Amos' trial

---

[49]<u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972) (failure to disclose to defendant promise made to key witness that he would not be prosecuted if he testified violates due process); <u>Brady v. Maryland</u>, 373 U.S. 83, 86 (1963) (failure to disclose material exculpatory evidence violates due process); <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959) (failure to correct false evidence violates due process).

[50]<u>East v. Scott</u>, 55 F.3d 996, 1000 (5th Cir. 1995) (citing <u>Townsend v. Sain</u>, 372 U.S. 293 (1963)); <u>Ward v. Whitley</u>, 21 F.3d 1355, 1367 (5th Cir. 1994), <u>cert. denied</u>, 115 S.Ct. 1257 (1995).

[51]<u>United States v. Tubwell</u>, 37 F.3d 175, 179 (5th Cir. 1994) (quoting <u>Ellis v. Lynaugh</u>, 873 F.2d 830, 840 (5th Cir. 1989), <u>cert. denied</u>, 493 U.S. 970 (1989)).

that he had not received any "deal" from the State in exchange for taking the stand. Later, however, Bennett averred in an affidavit that before he testified he was certain that "there was a deal" and that it would be "okay" for him to cooperate with the State.

The district court concluded that a federal evidentiary hearing on this issue was not necessary because there was no factual dispute whether the State had entered into an agreement with Bennett. The district court noted that the state habeas court's factual findings are presumed to be correct if supported by the record, and held that the record supported the state habeas court's finding that no deal was made between the State and Bennett in exchange for Bennett's testimony.[52] We agree.

Pursuant to 28 U.S.C. § 2254(d), in any federal habeas proceeding, a presumption of correctness must be accorded the findings of fact made by a state habeas court if those findings are supported by the record.[53] This presumption does not apply, however, to situations in which the factfinding procedure employed by the state habeas court is not adequate to afford the petitioner a full and fair hearing.[54] Amos argues that, as the state habeas court based its factual findings on a "paper hearing," he was not afforded a full and fair hearing on his claims, and that therefore,

[52]See 28 U.S.C. § 2254(d) (1992); See also Sumner v. Mata, 455 U.S. 591, 591-92 (1982); Armstead v. Scott, 37 F.3d 202, 206 (5th Cir. 1994), cert. denied, 115 S.Ct. 1709 (1995); DeVille v. Whitley, 21 F.3d 654, 656 (5th Cir.), cert. denied, 115 S.Ct. 436 (1994).

[53]28 U.S.C. § 2254(d) (1992).

[54]See 28 U.S.C. § 2254(d)(2) (1992).

26

the district court erred in applying the § 2254(d) presumption of correctness to the state court's findings.

Factual findings based solely on a paper hearing are not automatically entitled to a § 2254(d) presumption of correctness.[55] "[I]t is necessary to examine in each case whether a paper hearing is appropriate to the resolution of the factual dispute underlying the petitioner's claim."[56] Nevertheless, a factfinding procedure that involves credibility determinations and is based on a "paper hearing" affords the habeas petitioner a full and fair hearing when the state court judge who presided over the petitioner's trial conducts the habeas proceeding.[57] Whenever such a judicial identity exists, the presumption of correctness applies, and a federal habeas court must accord the presumption to the factual findings.

In the instant case, the disputed facts stem from state habeas credibility assessments that were made by the same state court judge who had presided over Amos' trial. We are satisfied, therefore, that the factfinding procedure followed by that judge

---

[55]Ellis v. Collins, 956 F.2d 76, 79 (5th Cir.), cert. denied, 503 U.S. 915 (1992).

[56]May v. Collins, 955 F.2d 299, 312 (5th Cir.), cert. denied, 504 U.S. 901 (1992).

[57]See, e.g., Armstead, 37 F.3d at 208 (presuming correctness of factual findings derived from affidavits when same judge who made findings was same judge who presided over petitioner's guilty plea); May, 955 F.2d at 314-15 (concluding that findings of fact based on paper hearing were entitled to presumption of correctness in subsequent federal habeas proceeding when state court habeas judge presided at petitioner's trial; observing that concerns about inadequacy of "trial by affidavit" is diminished in context where issue is before same judge and factual dispute stems from affidavit in which trial witness alleges false testimony).

27

afforded Amos a full and fair hearing. Accordingly, the district court did not err in presuming that the factual findings of the state court were correct. And, as we determine that the factual findings of the state court are supported by the record, we are convinced that the district court did not err in concluding, as had the state court judge, that the State had not entered into an agreement with Bennett, granting him a "deal" in exchange for his testimony.

As there was no "deal" between the State and Bennett, it follows that Amos' claim that the State failed to disclose material impeachment evidence and to correct Bennett's false testimony, in violation of the Eighth and Fourteenth Amendments, has no merit. Albeit on paper, Amos was afforded a full and adequate hearing on his state habeas petition. And, because he did not establish a factual dispute which, if resolved, would entitle him to relief, he was not entitled to a federal evidentiary hearing. We hold, therefore, that the district court did not err in denying Amos' request for an evidentiary hearing on his <u>Giglio/Napue</u> claim.

2. <u>Ineffective Assistance of Counsel</u>

In both his state and federal habeas petitions, Amos alleged that his counsels' failure to investigate and prepare mitigating evidence about his background and mental health constituted ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. In his appeal to this court, Amos contends that the state habeas court's findings on this issue are not entitled to the presumption of correctness because the factfinding

28

procedure employed by that court improperly elevated Amos' burden of merely _alleging_ facts to one requiring him to prove his factual allegations.  Additionally, Amos asserts--as he did on his _Giglio/Napue_ claim--that the district court erred in relying on the findings of the state court and in denying him an evidentiary hearing to prove his ineffective assistance claim.

To obtain habeas relief based on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient (cause prong) _and_ that the deficient performance of counsel prejudiced the defendant (prejudice prong).[58]  To satisfy the cause prong of the _Strickland_ standard, a defendant must show that counsel's representation fell below an objective standard of reasonableness.[59]  This objective standard is "highly deferential" and includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[60]  To satisfy the prejudice prong of _Strickland_, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different."[61]  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive _Strickland_ standard, but may dispose of such a

---

[58]_Strickland v. Washington_, 466 U.S. 668, 687 (1984).

[59]_Id._ at 687-88.

[60]_Id._ at 689.

[61]_Id._ at 694. "A reasonable probability is a probability sufficient to undermine the confidence in the outcome."  _Id._

29

claim based solely on a petitioner's failure to meet either prong of the test.[62]

A district court need not conduct an evidentiary hearing to resolve an ineffective assistance of counsel claim when a petitioner fails to allege facts which, if proved, would entitle the petitioner to relief,[63] or when the state court record supports that court's disposition of the claim.[64] A state habeas court's findings of fact made in the course of deciding such a claim are entitled to the § 2254(d) presumption of correctness,[65] but the cause and prejudice components of the Strickland test present a mixed question of law and fact that must be reviewed accordingly.[66] A state habeas court's ultimate conclusion that counsel did not render ineffective assistance, therefore, is not a factual finding to which the presumption of correctness applies, but is a legal question that must be reviewed *de novo*.[67]

---

[62]Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir.), cert. denied, 115 S.Ct. 418 (1994).

[63]Clark v. Collins, 19 F.3d 959, 964 (5th Cir.) (citing Streetman v. Lynaugh, 812 F.2d 950 (5th Cir. 1987)), cert. denied, 115 S.Ct. 432 (1994).

[64]Clark, 19 F.3d at 964 (citing Joseph v. Butler, 838 F.2d 786 (5th Cir. 1988)).

[65]As we determined above that the factfinding procedures employed by the state habeas court in this instance afforded Amos a full and fair hearing, the presumption of correctness applies equally to the factfindings of the state habeas court regarding ineffective assistance of counsel.

[66]Motley, 18 F.3d at 1226 (citing Strickland v. Washington, 466 U.S. 668, 698 (1984)).

[67]Black v. Collins, 962 F.2d 394, 401 (5th Cir.), cert. denied, 504 U.S. 992 (1992).

30

In his federal habeas petition, Amos argues *inter alia* that his lawyers' failure to conduct a reasonable investigation into Amos' background and character constitutes ineffective assistance of counsel because a reasonable investigation would have led to substantial, mitigating information that could then have been introduced during the punishment phase of his trial. In rejecting this claim, the district court first noted the state habeas court's factual finding that Amos strongly opposed having any witnesses testify on his behalf during the punishment phase of his trial. The district court determined in light of this fact that counsels' failure to investigate what witnesses might have said on Amos' behalf at the punishment phase of his trial could not have prejudiced Amos: He would not have permitted those witnesses to testify anyway, so what they might have said is academic. Thus, concluded the court, Amos could not establish with reasonable probability that, but for his attorneys' failure to interview Amos' family and friends, the outcome of his punishment phase would have been different; ergo no prejudice; ergo no merit to his claim of ineffective assistance of counsel. Albeit unnecessary, the district court also concluded that Amos failed to establish that his counsels' performance was deficient; ergo no cause; ergo no merit to is ineffective assistance claim.[68] We agree on both

_____

[68]The court rejected in a footnote Amos' claim that his counsel was constitutionally inadequate due to their failure to call witnesses during the punishment phase of his trial. The court later rejected Amos' contention that his counsel was ineffective for failing to ascertain his underlying mental condition and obtaining appropriate expert evaluation and testimony.

scores.

Amos nevertheless asserts that the district court's factual finding that he wanted no witnesses called misapprehends the significance of the state habeas court's finding that Amos did not want family members to testify. Amos contends that just because he did not want family members to testify, it does not follow that no prejudice could result from counsels' failure to interview them. Amos insists that, had his lawyers interviewed his family and friends, those lawyers would have discovered that Amos had been victimized and abused by his father, which in turn would have required them to employ a mental health professional to examine Amos before trial to elicit both guilt-innocence and penalty phase evidence.

Amos' argument fails for two reasons. First, contrary to Amos' assertion, the district court was correct in finding that Amos wanted no witnesses--not just no family members--to testify at his punishment phase. According to the findings of fact and conclusions of law contained in the State's response to Amos' state habeas petition, which the state habeas court adopted, Amos personally decided to present no punishment phase evidence. Moreover, in a colloquy with the trial court, Amos (1) confirmed that he had signed a statement in which he expressed his desire to call no further witnesses at the punishment phase of his trial, (2) testified that he did not want to call members of his family to testify, (3) acknowledged that he understood the consequences of resting his case at that time (last chance to present testimony),

32

and (4) confirmed that he had talked with his attorney and approved the strategy developed for his case.  Clearly, this supports both the state court's finding that Amos did not want to present any punishment phase testimony and the propriety of the district court's reliance on that finding.

Second, in its substantive review of Amos' claim, the district court considered the affidavit of one of Amos' attorneys, which was filed with leave of the court.[69]  In that affidavit, Amos' attorney stated that he made a strategic decision not to call a mental health expert to testify in Amos' behalf because it would have been of little value in light of Amos' coherent testimony at the guilt-innocence phase of his trial.  In addition, Amos' attorney averred that he <u>did</u> interview members of Amos' family and others whom Amos had mentioned might testify for him at the punishment phase of his trial.[70]  Although counsel had determined that Amos' friends--most of whom were convicted criminals--would not make credible witnesses, he planned to call as witnesses some of Amos' family members and a former state corrections employee. Before any of these witnesses could testify, however, Amos notified counsel that he did not want to present any punishment phase testimony.  Amos signed a statement to that effect and reiterated his decision in his testimony before the court.

---

[69]The district court noted that Amos did not request leave to file counteraffidavits.

[70]Counsel averred that in the course of these interviews no one mentioned any childhood abuse inflicted on Amos by his father.

33

In Clark v. Collins,[71] we considered whether a district court erred in rejecting, without an evidentiary hearing, a habeas petitioner's claim that his counsel's failure to seek an independent psychiatric evaluation or interview family members in support of a possible insanity defense constituted ineffective assistance of counsel. We accepted the state court's factual findings that supported counsel's tactical decision not to request additional psychiatric evaluation, as well as that court's finding that the petitioner had explicitly requested that counsel refrain from involving his family in his case. We concluded that the petitioner's counsel did not perform deficiently in failing to seek additional medical opinions or in failing to interview family members regarding the petitioner's sanity. Consequently, we held that the district court did not err in rejecting the petitioner's ineffective assistance of counsel claims without conducting an evidentiary hearing.[72] Reinforced by our holding in Clark, we are comfortable in concluding in this instance that the district court did not err in rejecting Amos' ineffective assistance of counsel claim without conducting an evidentiary hearing.

We also reject Amos' other argument, that the district court erroneously relied on the state habeas court's legal conclusion

---

[71]19 F.3d 959 (5th Cir.), cert. denied, 115 S.Ct. 432 (1994).

[72]Id. at 964-65. Cf. Barnard v. Collins, 958 F.2d 634, 642 (5th Cir. 1992) (when counsel had no reason to believe at time of offense or trial that petitioner suffered from mental defect, failure of counsel to investigate psychological, medical or physical origins of petitioner's mental condition was not ineffective assistance of counsel), cert. denied, 113 S.Ct. 990 (1993).

34

that Amos failed to prove mental impairment. In fact, in our review of the district court's opinion, we fail to discern just where it is that Amos finds the district court to have relied on such a conclusion. We do see where the district court (1) recited the state court's findings, including that court's finding that "Amos had failed to produce any proof of reduced mental abilities and there was no evidence of 'reduced mental abilities,'" and (2) used the state court's finding that there was "no evidence of reduced mental abilities" to corroborate the district court's de novo review and subsequent denial of Amos' claim. But if, in denying Amos' claim, the district court relied on any of the state habeas court's factual findings at all, it was at most the fact that Amos wanted no witnesses to testify and the fact that there was no evidence indicating that Amos was mentally impaired.

Finding that Amos has not alleged any fact which, if proved, would entitle him to an evidentiary hearing, we hold that the district court did not err in rejecting Amos' ineffective assistance of counsel claim without conducting an evidentiary hearing.

IV

CONCLUSION

We grant Amos' request for CPC, and for the foregoing reasons affirm the judgment of the district court. The stay of execution ordered by this court on January 6, 1995 is vacated.

AFFIRMED

35